32

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

D-1 RADWAN MALAS,
D-2 ALEX Q. MATAVERDE,
D-3 CORNELIUS OPRISIU,
D-4 MICHAEL MOLLOY,
D-5 SHAFIQ UR REHMAN, and
D-6 MONTAHA HOGEIGE,

        Defendants.

Case: 2:23-cr-20063
Judge: Borman, Paul D.
MJ: Stafford, Elizabeth A.
Filed: 02-01-2023 At 03:29 PM
INDI SEALED MATTER (SS)

VIO: 18 U.S.C. § 1349
     18 U.S.C. § 1347
     18 U.S.C. § 371
     42 U.S.C. § 1320a-
     7b(b)(1)-(2)
     18 U.S.C. § 1957
     18 U.S.C. § 2

## **INDICTMENT**

THE GRAND JURY CHARGES:

## **General Allegations**

At all times relevant to this Indictment:

### **The Medicare Program**

1.    The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were 65 years of age or over or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and

Human Services ("HHS").  Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.     Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3.     Medicare covered different types of benefits and was separated into different program "parts."  Medicare "Part A" covered certain eligible home health care costs for medical services provided by a home health agency ("HHA"), also referred to as a "provider," to persons who already qualified for Medicare and who additionally required home health services because of an illness or disability that caused them to be homebound.  Medicare "Part B" covered the cost of physicians' services, medical equipment and supplies, diagnostic laboratory services, and home health services.

4.     National Government Services was the CMS intermediary for Medicare Part A in the state of Michigan starting in or around May 2015.  AdvanceMed (now known as "CoventBridge") was the Zone Program Integrity Contractor ("ZPIC"), meaning the Medicare contractor charged with investigating fraud, waste, and abuse.

5.     Wisconsin Physicians Service ("WPS") administered Medicare Part B for claims arising in the state of Michigan.  CMS contracted with WPS to receive, adjudicate, process, and pay claims.

2

6.     CMS contracted with regional contractors to process and pay Medicare claims. First Coast Service Options, Inc. ("First Coast") was the Medicare contractor that processed and paid claims involving Part B services, including diagnostic laboratory services, provided in Florida from at least May 2015 to at least May 2021.

7.     SafeGuard Services, LLC ("Safeguard"), the Medicare Unified Program Integrity Contractor covering Florida from 2017 through 2021, was responsible for performing investigations and audits designed to protect Medicare from fraud, waste, and abuse.

8.     Payments under Medicare were often made directly to a provider of goods or services, rather than to a Medicare beneficiary. This payment occurred when the provider submitted the claim to Medicare for payment, either directly or through a billing company.

9.     Physicians, clinics, and HHAs, among other medical and service providers, were collectively referred to as "providers." When enrolling in Medicare, providers agreed to abide by Medicare's policies and procedures, rules, and regulations governing reimbursement, and furthermore, certified that they would not knowingly present, or cause to be presented, false and fraudulent claims. To receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all of the provisions of the Social Security Act, the regulations promulgated under the Act, and applicable

policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors.

10.     Upon enrollment, the provider, whether a clinic, a HHA, or an individual, was assigned a provider identification number for Medicare billing purposes (referred to as a "National Provider Identifier" or "NPI").   When the provider rendered a service, the provider submitted a claim for reimbursement to the Medicare contractor or carrier that included the NPI assigned to that provider.

11.     In order to receive reimbursement for a covered service from Medicare, a provider was required to submit a claim, either electronically or using a form (e.g., a CMS-1500 form or UB-92) containing the required information appropriately identifying the provider, beneficiary, and services rendered.

12.     Providers were given and/or provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations.   Providers could only submit claims to Medicare for services they rendered, and providers were required to maintain patient records to verify that the services were provided as described on the claim form.   These records were required to be sufficient to permit Medicare, through its contractors, to review the appropriateness of Medicare payments made to the provider.

13.     Health care providers could only submit claims to Medicare for reasonable and medically necessary services that they rendered.   Medicare

4

regulations required health care providers enrolled with Medicare to maintain complete and accurate patient medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted. Medicare required complete and accurate patient medical records so that Medicare could verify that the services were provided as described on the claim form. These records were required to be sufficient to permit Medicare, through WPS and other contractors, to review the appropriateness of Medicare payments made to the health care provider.

14.   Medicare only covered home health services, if, on the claimed dates of service:

a.   the Medicare beneficiary was under the care of a doctor and receiving services under a plan of care established and reviewed regularly by a doctor;

b.   the Medicare beneficiary needed, and a doctor certified that the beneficiary needed, one or more of the following: (i) Intermittent skilled nursing care, (ii) Physical therapy, (iii) Speech-language pathology services, or (iv) Continued occupational therapy;

c.   the HHA must have been approved by Medicare (Medicare-certified); and

     d.    the Medicare beneficiary was homebound, and a doctor certified that the Medicare beneficiary was homebound.

15.    Under Medicare Part B, physician home visit services were required to be reasonable and medically necessary for the treatment or diagnosis of the patient's illness or injury. Individuals providing these services were required to have the appropriate training, qualifications, and licenses to provide such services. Providers were required to: (a) document the medical necessity of these services; (b) document the date the service was performed; (c) identify the provider who performed the service; and (d) identify the clinic, physician office, or group practice where the provider provided the service. Providers conveyed this information to Medicare by submitting claims using billing codes and modifiers.

16.    The reimbursement rates paid by Medicare to providers for home visit services were determined by the amount of time spent with the patient or the complexity of the visit. The highest reimbursements rates reimbursed for (a) initial home visits of 75 minutes in length, face-to-face with the patient, or required medical decision making of high complexity (Code 99345), and (b) established patient home visits of 60 minutes in length, face-to-face with the patient, or required medical decision making of moderate to high complexity (Code 99350).

17.    Under Medicare Part B, for a laboratory to properly bill and be paid by Medicare for laboratory testing, including urine drug testing, the patient must,

among other things, qualify for the testing under Medicare's established rules and regulations. The testing also must be rendered according to Medicare's rules and regulations, and certain documents must be completed before a claim was submitted for reimbursement to Medicare.

18. For a laboratory to properly bill and be paid by Medicare for urine drug testing, the urine drug testing must have been both reasonable and medically necessary. For example, urine drug testing was medically necessary if the patient presented to a physician with a suspected drug overdose. Regular, routine, or recreational drug screenings, however, were not reasonable or medically necessary. Further, the patient's medical record must have included documentation that fully supported the reasonableness of and medical necessity for the urine drug testing.

19. Definitive, or confirmation, urine drug testing was the most complex urine drug testing available that not only determined if a substance was present, but also the quantity of the substance present.

20. Under Medicare rules and regulations, to be appropriately reimbursable, definitive urine drug testing needed to be specific and individualized. Routine definitive urine drug testing, such as ordering the same comprehensive definitive urine drug testing panels for every patient in a physician's practice, was not medically necessary and not appropriately reimbursable.

7

21. The reimbursement rates paid by Medicare to laboratories for performing definitive urine drug testing were determined by the number of classes of drugs tested. The highest reimbursement rate (Code G0483) reimbursed for the testing of more than 22 classes of drugs.

22. Medicare would not reimburse claims that were procured through the payment or receipt of kickbacks and bribes.

### The Physician Business

23. Infinity Visiting Physician Services, PLLC ("Infinity") was a Michigan company doing business in the Eastern District of Michigan. Infinity was enrolled as a participating provider with Medicare and submitted claims to Medicare.

### The Laboratory

24. Integra Lab Management LLC ("Integra") was a Florida company doing business in the Eastern District of Michigan. Integra was enrolled as a participating provider with Medicare and submitted claims to Medicare.

### The Home Health Agencies

25. Home Health Agency 1 was a Michigan company doing business within the Eastern District of Michigan. Home Health Agency 1 was enrolled as a participating provider with Medicare and submitted claims to Medicare.

26. Home Health Agency 2 was a Michigan company doing business within the Eastern District of Michigan. Home Health Agency 2 was enrolled as a

participating provider with Medicare and submitted claims to Medicare.

27.    Home Health Agency 3 was a Michigan company doing business within the Eastern District of Michigan. Home Health Agency 3 was enrolled as a participating provider with Medicare and submitted claims to Medicare.

28.    Home Health Agency 4 was a Michigan company doing business within the Eastern District of Michigan. Home Health Agency 4 was enrolled as a participating provider with Medicare and submitted claims to Medicare.

29.    Home Health Agency 5 was a Michigan company doing business within the Eastern District of Michigan. Home Health Agency 5 was enrolled as a participating provider with Medicare and submitted claims to Medicare.

30.    Home Health Agency 6 was a Michigan company doing business within the Eastern District of Michigan. Home Health Agency 6 was enrolled as a participating provider with Medicare and submitted claims to Medicare.

31.    Home Health Agency 7 was a Michigan compnay doing business within the Eastern District of Michigan. Home Health Agency 7 was enrolled as a participating provider with Medicare and submitted claims to Medicare.

### The Defendants and Other Individuals

32.    Defendant RADWAN MALAS, a resident of Oakland County, Michigan, controlled, owned, and operated Infinity from in or around January 2014

through at least the date of Indictment.  RADWAN MALAS is not a licensed medical professional.

33.     Defendant ALEX Q. MATAVERDE, a resident of Wayne County, Michigan, was a physician licensed in the State of Michigan who was enrolled as participating provider with Medicare for Infinity from in or around February 2016 through at least the date of Indictment.

34.     Defendant CORNELIUS OPRISIU, a resident of Livingston County, Michigan, was a physician licensed in the State of Michigan who was enrolled as participating provider with Medicare for Infinity from in or around April 2017 through at least the date of Indictment.

35.     Defendant SHAFIQ UR REHMAN, a resident of Wayne County, Michigan, was a physician's assistant licensed in the State of Michigan who was enrolled as a participating provider with Medicare for Infinity from in or around May 2016 through in or around May 2019.

36.     Defendant MONTAHA HOGEIGE, a resident of Wayne County, Michigan, was a medical assistant working on behalf of Infinity between at least the beginning of 2016 and 2020.

37.     Defendant MICHAEL MOLLOY, a resident of Wayne County, Michigan, was a minority owner of Integra and performed marketing services on behalf of Integra.

38.    Individual 1, a resident of Oakland County, Michigan, controlled, owned, and operated Home Health Agency 1, Home Health Agency 2, Home Health Agency 3, Home Health Agency 4, Home Health Agency 5, Home Health Agency 6, and Home Health Agency 7.

39.    Individual 2, a resident of Oakland County, Michigan, controlled, owned and operated Home Health Agency 1, with Individual 1.

### Related Entities

40.    Pegasus Management Associates, LLC ("Pegasus") was a Michigan limited liability company doing business in the Eastern District of Michigan. Pegasus was owned and operated by RADWAN MALAS.

<u>COUNT 1</u>
**18 U.S.C. § 1349**
**(Health Care Fraud Conspiracy)**
**D-1 RADWAN MALAS**
**D-2 ALEX Q. MATAVERDE**
**D-3 CORNELIUS OPRISIU**
**D-4 MICHAEL MOLLOY**
**D-5 SHAFIQ UR REHMAN**

41.    Paragraphs 1 through 40 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

42.    Beginning in or around February 2015, and continuing through in or around the date of Indictment, the exact dates being unknown to the Grand Jury, in the Eastern District of Michigan, and elsewhere, the defendants RADWAN

MALAS, ALEX Q. MATAVERDE, CORNELIUS OPRISIU, MICHAEL

MOLLOY, and SHAFIQ UR REHMAN did willfully and knowingly, combine,

conspire, confederate, and agree with each other, and others, known and unknown

to the Grand Jury, to execute a scheme and artifice to defraud Medicare, a health

care benefit program affecting commerce, as defined in Title 18, United States Code,

Section 24(b), and to obtain, by means of materially false and fraudulent pretenses,

representations, and promises, money and property owned by, and under the custody

and control of, said health care benefit program, in connection with the delivery of

and payment for health care benefits, items, and services, in violation of Title 18,

United States Code, 1347.

### Purpose of the Conspiracy

43.    It was a purpose of the conspiracy for RADWAN MALAS, ALEX Q.

MATAVERDE, CORNELIUS OPRISIU, MICHAEL MOLLOY, SHAFIQ UR

REHMAN, and other co-conspirators to unlawfully enrich themselves by, among

other things: (a) submitting and causing the submission of false and fraudulent

claims to Medicare for claims based on illegal kickbacks and bribes; (b) submitting

or causing the submission of false and fraudulent claims to Medicare for services

that were (i) medically unnecessary, (ii) ineligible for Medicare reimbursement, and

(iii) not provided as represented; (c) concealing the submission of false and

fraudulent claims to Medicare and the receipt and transfer of the proceeds from the

fraud; and (d) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators, and to further the fraud.

### Manner and Means

44.     The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

***Straw Owners***

45.     In or around January 2014, RADWAN MALAS and others incorporated Infinity, in Oakland County, Michigan.

46.     In or around February 2014, RADWAN MALAS and others falsely certified to Medicare that Infinity would comply with all Medicare rules and regulations, and federal laws, including that Infinity would refrain from violating the Federal Anti-Kickback Statute.

47.     Thereafter, RADWAN MALAS and others submitted and caused to be submitted false and fraudulent enrollment materials to Medicare that failed to disclose MALAS's exclusive ownership interest and managing control.

48.     RADWAN MALAS and others disguised RADWAN MALAS's ownership interest and control over Infinity by, among other things, making material misrepresentations and omissions in corporate filings with the State of Michigan and in enrollment applications and claims submitted to Medicare.

49.     From in or around January 2014, through in or around October 2018, RADWAN MALAS falsely certified to Medicare, as the authorized official, that other physicians were the sole owners of Infinity, when in fact RADWAN MALAS held exclusive ownership interest and control over Infinity during this period.

**Submission of False and Fraudulent Claims by Integra**

50.     RADWAN MALAS, ALEX Q. MATAVERDE, CORNELIUS OPRISIU, SHAFIQ UR REHMAN, and others would submit and cause the submission of false and fraudulent claims for services purportedly provided by Infinity that were medically unnecessary, ineligible for Medicare reimbursement, and not provided as represented.

51.     RADWAN MALAS, MICHAEL MOLLOY, and others devised and participated in a scheme in which MICHAEL MOLLOY and others paid RADWAN MALAS illegal kickbacks and bribes in exchange for the referral of orders signed by Infinity medical providers, including ALEX Q. MATAVERDE, CORNELIUS OPRISIU, and others, for medically unnecessary urine drug testing to Integra, so that Integra could bill Medicare for performing the services that were obtained through illegal kickbacks and bribes, medically unnecessary, ineligible for Medicare reimbursements, and not provided as represented.

52.     In furtherance of the scheme, Infinity medical providers, including ALEX Q. MATAVERDE, CORNELIUS OPRISIU, and others, would order and

refer medically unnecessary urine drug testing to Integra, including for medically unnecessary definitive urine drug testing.

***Submission of False and Fraudulent Claims to Medicare Referred by Infinity to Home Health Agencies***

53. RADWAN MALAS, and others devised and participated in a scheme in which Individual 1 and Individual 2 sent Medicare beneficiaries, obtained through illegal kickbacks and bribes and who did not qualify for Medicare reimbursement of home health services, to Infinity to be certified for home health care by Infinity medical providers, including ALEX Q. MATAVERDE, CORNELIUS OPRISIU, and others. These HHAs subsequently billed Medicare for services provided to Medicare beneficiaries that were obtained through illegal kickbacks and bribes, medically unnecessary, not eligible for Medicare reimbursement, and not provided as represented.

54. RADWAN MALAS, ALEX Q. MATAVERDE, CORNELIUS OPRISIU, Individual 1, Individual 2, and others caused the submission of false and fraudulent claims for home health services purportedly provided by Home Health Agency 1, Home Health Agency 2, Home Health Agency 3, Home Health Agency 4, Home Health Agency 5, Home Health Agency 6, and Home Health Agency 7 that were procured through illegal kickbacks and bribes paid by Individual 1 and Individual 2, and were medically unnecessary, not eligible for Medicare reimbursement, and not provided as represented.

15

***Total Loss***

55.    RADWAN   MALAS,   ALEX   Q.   MATAVERDE,   CORNELIUS
OPRISIU, MICHAEL MOLLOY, SHAFIQ UR REHMAN, Individual 1, Individual
2, and  other  co-conspirators  submitted  and  caused  the  submission  of false  and
fraudulent claims to Medicare in an approximate amount of at least $37 million for
services  that  were  obtained  through  illegal  kickbacks  and  bribes,  medically
unnecessary,   ineligible   for   Medicare   reimbursement,   and   not   provided   as
represented.

All in violation of Title 18, United States Code, Section 1349.

### COUNTS 2-4
### 18 U.S.C. §§ 1347 & 2
### (Health Care Fraud)
### D-1 RADWAN MALAS
### D-2 ALEX Q. MATAVERDE
### D-3 CORNELIUS OPRISIU
### D-5 SHAFIQ UR REHMAN

56.    Paragraphs 1 through 40 of the General Allegations section of this
Indictment are re-alleged and incorporated by reference as though fully set forth
herein.

57.    On or about the dates enumerated below, in the Eastern District of
Michigan, and elsewhere, defendants RADWAN MALAS, ALEX Q.
MATAVERDE, CORNELIUS OPRISIU, and SHAFIQ UR REHMAN, in
connection with the delivery of, and payment for, health care benefits, items, and

services, aided and abetted, and aiding and abetting others known and unknown to the Grand Jury, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud Medicare, a federal health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, any money and property owned by, or under the custody or control of, said health care benefit program, in connection with the delivery of, and payment for, health care benefits, items, and services, by submitting or causing the submission of false and fraudulent claims to Medicare.

**Purpose of the Scheme and Artifice**

58.    It was the purpose of the scheme and artifice for RADWAN MALAS, ALEX Q. MATAVERDE, CORNELIUS OPRISIU, and SHAFIQ UR REHMAN to unlawfully enrich themselves and their accomplices by, among other things:  (a) submitting and causing the submission of false and fraudulent claims to Medicare for claims based on kickbacks and bribes; (b) submitting and causing the submission of false and fraudulent claims to Medicare for services that were (i) medically unnecessary, (ii) ineligible for Medicare reimbursement, and (iii) not provided as represented; (c) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of the proceeds from the fraud; and

(d) diverting proceeds of the fraud for the personal use and benefit of the defendants and their accomplices, and to further the fraud.

## The Scheme and Artifice

59.     Paragraphs 44 through 55 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

## Acts in Execution of the Scheme and Artifice

60.     On or about the dates specified below, in  the Eastern District of Michigan, and elsewhere, RADWAN MALAS, ALEX Q. MATAVERDE, CORNELIUS OPRISIU, and SHAFIQ UR REHMAN, in connection with the delivery of and payment for health care benefits, items, and services, and aided and abetted by, and aiding and abetting others known and unknown to the Grand Jury, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of said health care benefit program:

18

| Count Defendant(s) | Medicare Beneficiary | Approximate Date of Service | Description of Items Billed | Approximate Amount Billed to Medicare |
|---|---|---|---|---|
| 2 D-1 MALAS D-5 REHMAN | JQ | 2/14/2018 | 60-Minute Established Patient Visit | $375.00 |
| 3 D-1 MALAS D-2 MATAVERDE | IT | 10/2/2019 | Certification of Medicare Covered Home Health Care | $100.00 |
| 4 D-1 MALAS D-3 OPRISIU | IS | 4/23/2020 | Certification of Medicare Covered Home Health Care | $100.00 |

Each in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT 5
### 18 U.S.C. § 371
### (Conspiracy to Defraud the United States and to Pay and Receive Health Care Kickbacks)
### D-1 RADWAN MALAS
### D-4 MICHEAL MOLLOY
### D-6 MONTAHA HOGEIGE

61.  Paragraphs 1 through 40 f the General Allegations section and Paragraphs 44 through 55 of the Manner and Means section of Count 1 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

62.  From in or around May 2017, and continuing through in or around March 2019, the exact dates being unknown to the Grand Jury, in the Eastern District of Michigan, and elsewhere, defendants RADWAN MALAS, MICHEAL

MOLLOY, and MONTAHA HOGEIGE did willfully, that is with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other, and others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is:

    a.    to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of Medicare, in violation of Title 18, United States Code, Section 371;

    b.    to offer and pay remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind to any person to induce such person: (i) to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare; and (ii) to purchase, lease, order, and arrange for and recommend purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program, that is, Medicare, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A) and (B); and

    c.    to solicit or receive remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind: (i) in return for referring an individual to a person for the furnishing and arranging for the furnishing

of any item or service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare; and (ii) in return for purchasing, leasing, ordering, and arranging for and recommending purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program, that is, Medicare, in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A) and (B).

### Purpose of the Conspiracy

63.     It was the purpose of the conspiracy for RADWAN MALAS, MICHAEL MOLLOY, MONTAHA HOGEIGE, and their co-conspirators, to unlawfully enrich themselves by: (1) offering, paying, soliciting, and receiving kickbacks and bribes to ensure that Medicare beneficiaries' urine samples were referred by Infinity medical providers to Integra for urine drug testing; (2) submitting and causing the submission of claims to Medicare for urine drug testing of urine samples referred to Integra as a result of the payment of kickbacks and bribes; and, (3) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

### Manner and Means

The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

21

64.     RADWAN MALAS, MICHAEL MOLLOY, MONTAHA
HOGEIGE, and their co-conspirators, devised and participated in a scheme to pay
and receive illegal kickbacks and bribes in exchange for referring urine samples
and physician orders for urine drug testing to Integra for the purpose of billing
Medicare.

65.     RADWAN MALAS, MICHEAL MOLLOY, MONTAHA
HOGEIGE, and others negotiated, calculated, and agreed to facilitate and conceal
the payment of kickbacks and bribes from Integra to Infinity, in the form of
Integra's payment of salaries of Infinity employees, including MONTAHA
HOGEIGE, in exchange for urine samples and physician orders from Infinity to be
sent to Integra for the purpose of submitting claims to Medicare.

66.     MICHAEL MOLLOY and others, by and through Integra and in
agreement with RADWAN MALAS, MONTAHA HOGEIGE, paid the salary of
MONTAHA HOGEIGE as if she was employed by Integra, when in fact
MONTAHA HOGEIGE continued to be employed by, and provide services on
behalf of, Infinity.

67.     RADWAN MALAS, MICHAEL MOLLOY, and others negotiated,
calculated, and agreed to facilitate and conceal and disguise the payment of
kickbacks and bribes from Integra to RADWAN MALAS by routing kickback
payments through Pegasus, in exchange for urine samples and physician orders

from Infinity to be sent to Integra for the purpose of submitting claims to Medicare.

68.     Between in or around June 2017 and March 2019, MICHAEL MOLLOY, Lab Co-Owner 1, and others, through Integra, submitted and caused the submission of false and fraudulent claims to Medicare for urine drug testing services that were obtained through illegal kickbacks and bribes to RADWAN MALAS, resulting in Integra being paid approximately $686,000 by Medicare.

### Overt Acts

69.     In furtherance of the conspiracy and to accomplish its objects and purpose, at least one of the co-conspirators committed and caused to be committed in the Eastern District of Michigan, and elsewhere, at least one of the following overt acts, among others:

70.     In or around June 2017, MONTAHA HOGEIGE agreed with RADWAN MALAS, MICHAEL MOLLOY, and others to receive salary payments from Integra for work performed exclusively on behalf of Infinity.

71.     On or about at least the following dates, MONTAHA HOGEIGE accepted from MICHAEL MOLLOY, and others, on behalf of Integra, the payments set forth below as compensation for work performed exclusively on behalf of Infinity:

|    | Date       | Amount  |
|----|------------|---------|
| a. | 06/16/2017 | $1,200  |

| | | |
|---|---|---|
| b. | 06/30/2017 | $1,200 |
| c. | 07/14/2017 | $1,200 |
| d. | 07/28/2017 | $1,200 |
| e. | 08/11/2017 | $1,200 |
| f. | 08/25/2017 | $1,200 |
| g. | 09/08/2017 | $1,200 |
| h. | 09/27/2017 | $1,200 |
| i. | 10/6/2017 | $1,200 |
| j. | 10/20/2017 | $1,200 |
| k. | 11/3/2017 | $1,200 |
| l. | 11/17/2017 | $1,200 |
| m. | 12/1/2017 | $1,200 |
| n. | 12/15/2017 | $1,200 |
| o. | 12/29/2017 | $1,200 |
| p. | 01/12/2018 | $1,200 |
| q. | 01/26/2018 | $1,200 |
| r. | 02/9/2018 | $1,200 |
| s. | 02/23/2018 | $1,200 |
| t. | 03/9/2018 | $1,200 |
| u. | 04/6/2018 | $1,200 |

72.    On or about March 2018, MICHAEL MOLLOY and others, on behalf of Integra, met RADWAN MALAS and agreed to pay RADWAN MALAS, by and through Pegasus, in exchange for urine samples and physician orders for definitive urine drug testing, to be obtained by RADWAN MALAS from Infinity physicians.

73.    On or about the following dates, RADWAN MALAS accepted from MICHAEL MOLLOY and others, on behalf of Integra, the payments set forth below via check from an Integra bank account to RADWAN MALAS, by and through Pegasus:

24

|     | **Date**  | **Amount**   |
| --- | --------- | ------------ |
| a.  | 03/30/18  | $10,800.00   |
| b.  | 04/30/18  | $10,800.00   |
| c.  | 06/05/18  | $10,800.00   |
| d.  | 07/02/18  | $10,800.00   |
| e.  | 08/15/18  | $10,800.00   |
| f.  | 09/17/18  | $10,800.00   |
| g.  | 10/11/18  | $10,800.00   |
| h.  | 11/06/18  | $10,800.00   |
| i.  | 12/18/18  | $10,800.00   |
| j.  | 01/18/19  | $10,800.00   |
| k.  | 02/13/19  | $10,800.00   |
| l.  | 03/13/19  | $10,800.00   |

All in violation of Title 18, United States Code, Section 371.

### COUNT 6
### 42 U.S.C. §§ 1320a-7b(b)(2)(A)-(B)
### 18 U.S.C. § 2
### (Payment of Kickbacks in Connection with
### a Federal Health Care Program)
### D-5 MICHAEL MOLLOY

74.     Paragraphs 1 through 40 of the General Allegations section and Paragraphs 44 through 55 of the Manner and Means section of Count 1, and Paragraphs 64 through 73 of the Manner and Means and Overt Acts sections of Count 5 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

75.     On or about the date set forth below, in the Eastern District of Michigan, and elsewhere, defendant MICHAEL MOLLOY, aided and abetted, and aiding and abetting others known and unknown to the Grand Jury, did knowingly

25

and willfully offer and pay remuneration, including kickbacks and bribes, directly

and indirectly, overtly and covertly, in cash and in kind, including by check, as set

forth below, to induce RADWAN MALAS, by and through Infinity to: (i) refer an

individual to a person for furnishing and arranging for the furnishing of any item

and service for which payment may be made in whole and in part under a Federal

health care program, that is, Medicare; and, (ii) purchase, lease, order, and arrange

for and recommend purchasing, leasing or ordering any good, facility, service, or

item, for which payment may be made in whole or in part under a Federal health

care program, that is Medicare; as set forth below:

| Count | Approximate Date of Payment | Description | Approximate Amount |
|---|---|---|---|
| 6<br>D-5 MICHAEL MOLLOY | March 13, 2019 | Check from Integra Bank Account No. 8964 to Pegasus Bank Account No. 0069 | $10,800.00 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A)-(B)

and Title 18, United States Code, Section 2.

## COUNT 7
### 42 U.S.C. §§ 1320a-7b(b)(1)(A)-(B)
### 18 U.S.C. § 2
### (Receipt of Kickbacks in Connection with
### a Federal Health Care Program)
### D-1 RADWAN MALAS

76.     Paragraphs 1 through 40 of the General Allegations section and

26

Paragraphs 44 through 55 of the Manner and Means section of Count 1, and

Paragraphs 64 through 73 of the Manner and Means and Overt Acts sections of

Count 5 of this Indictment are re-alleged and incorporated by reference as though

fully set forth herein.

77.    On or about the date set forth below, in the Eastern District of

Michigan, and elsewhere, defendant RADWAN MALAS, aided and abetted, and

aiding and abetting others known and unknown to the Grand Jury, did knowingly

and willfully solicit and receive remuneration, including kickbacks and bribes,

directly and indirectly, overtly and covertly, in cash and in kind, including by

check, as set forth below in return for: (i) referring an individual to a person for

furnishing and arranging for the furnishing of any item and service for which

payment may be made in whole and in part under a Federal health care program,

that is, Medicare; and, (ii) purchasing, leasing, ordering, and arranging for and

recommending purchasing, leasing or ordering any good, facility, service, or item,

for which payment may be made in whole or in part under a Federal health care

program, that is Medicare; as set forth below:

| Count | Approximate Date of Receipt of Payment | Description | Approximate Amount |
|---|---|---|---|
| 7<br>D-1 RADWAN MALAS | March 13, 2019 | Check from Integra Bank Account No. 8964 to Pegasus Bank Account No. 0069 | $10,800.00 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A)-(B) and Title 18, United States Code, Section 2.

## COUNT 8
### 18 U.S.C. §§ 1957 and 2
### (Money Laundering)
### D-1 RADWAN MALAS

78.     On or about the date set forth below, in the Eastern District of Michigan, and elsewhere, defendant RADWAN MALAS, aided and abetted by, and aiding and abetting others known and unknown to the Grand Jury, did knowingly engage and attempt to engage in the following monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the payment of funds, such property having been derived from a specified unlawful activity, that is, conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1349, and health care fraud, in violation of Title 18, United States Code, Section 1347:

| COUNT | DEFENDANT | DATE | TRANSACTION |
|-------|-----------|------|-------------|
| 8 | D-1 MALAS | September 9, 2020 | $200,000 transfer from Infinity Bank Account No. 0302 to Pegasus Bank Account No. 0069 |

In violation of Title 18, United States Code, Sections 1957 and 2.

## FORFEITURE ALLEGATIONS
### (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461; 18 U.S.C. §§ 982(a)(1) and (7))

79.     The allegations contained in Counts 1 through 8 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture against defendants RADWAN MALAS, ALEX Q. MATAVERDE, CORNELIUS OPRISIU, MICHAEL MOLLOY, SHAFIQ UR REHMAN, and MONTAHA HOGEIGE, pursuant to Title 18, United States Code, Sections 981 and 982, and Title 28, United States Code, Section 2461.

80.     Pursuant to Title 18, United States Code, Section 981(a)(1)(C), together with Title 28, United States Code, Section 2461, upon being convicted of the crimes charged in Counts 1 through 7 of this Indictment, the convicted defendant(s) shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offense.

81.     Pursuant to Title 18, United States Code, Section 982(a)(7), upon being convicted of the crimes charged in Counts 1 through 7 of this Indictment, the convicted defendant(s) shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

82.     Pursuant to Title 18, United States Code, Section 982(a)(1) and/or 18 U.S.C. § 981 with 28 U.S.C. § 2461, upon being convicted of the crimes charged in

Count 8 of this Indictment, the convicted defendant shall forfeit to the United States any property, real or personal, involved in the offense, or any property traceable to such property.

83.   <u>Money Judgment</u>:  Property subject to forfeiture includes but is not limited to a forfeiture money judgment equal to total amount of forfeitable proceeds as a result of defendant's violations as alleged in Counts 1 through 8 of this Indictment.

84.   <u>Substitute Assets</u>:  If the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

> a.  cannot be located upon the exercise of due diligence;
>
> b.  has been transferred or sold to, or deposited with, a third party;
>
> c.  has been placed beyond the jurisdiction of the Court;
>
> d.  has been substantially diminished in value; or
>
> e.  has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b) and/or Title 28, United States Code, Section 2461, to seek to forfeit any other property of RADWAN MALAS, ALEX Q. MATAVERDE, CORNELIUS OPRISIU, MICHAEL MOLLOY, SHAFIQ UR REHMAN, and MONTAHA HOGEIGE, up to the value of such property.

30

THIS IS A TRUE BILL.

DAWN N. ISON
UNITED STATES ATTORNEY

*s/ Grand Jury Foreperson*
Grand Jury Foreperson

GLENN S. LEON
Chief
Criminal Division, Fraud Section
U.S. Department of Justice

REGINA R. MCCULLOUGH
Chief, Health Care Fraud Unit
United States Attorney's Office
Eastern District of Michigan


s/ Shankar Ramamurthy
SHANKAR RAMAMURTHY
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (202) 924-5368
Email: shankar.ramamurthy@usdoj.gov

Dated: January 25, 2023

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cov** | Case: 2:23-cr-20063<br>Judge: Borman, Paul D.<br>MJ: Stafford, Elizabeth A.<br>Filed: 02-01-2023 At 03:29 PM<br>INDI SEALED MATTER (SS) |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to compl

| **Companion Case Information** | **Companion Case Number:** |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | **Judge Assigned:** |
| ☐ Yes   ☒ No | **AUSA's Initials:** |

**Case Title:** USA v. Malas, et al.

**County where offense occurred :** Oakland and Wayne

**Check One:**   ☒ **Felony**      ☐ **Misdemeanor**      ☐ **Petty**

✓ Indictment/____ Information --- **no prior complaint.**

____ Indictment/____ Information --- based upon prior complaint [Case number: ____]

____ Indictment/____ Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below].*

## Superseding Case Information

**Superseding to Case No:** _____      **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| | | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

January 25, 2023
Date

s/Shankar Ramamurthy

Shankar Ramamuthy
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone:202-924-5368
Fax:   N/A
E-Mail address: Shankar.Ramamurthy@usdoj.gov
Attorney Bar #:  IL 6306790

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.